H. E. GOETZ *et al., v.* KNOXVILLE POWER & LIGHT CO.*

(*Knoxville.* September Term, 1926.)

Opinion filed, November 20, 1926.

**1. EASEMENT. Dedication. Street. Square. Park.**

There is no difference in principle applicable to the dedication of a public street, square or park, when it is sought to assert an easement appurtenant in favor of an adjoining, or abutting, landowner by reason of conveyance with reference to a recorded plan, the recital, covenant or provision in deed; or an estoppel, in pais. (Post, p. 555.)

Citing:  State ex rel. Kincaid v. Hamilton, 109 Tenn., 276; Brew v. Van Deman, 6 Heisk. (53 Tenn.), 433; Jones on Easements, secs. 22, 23, 47, 236, 436, 551, 19 Corpus Juris; sec. 138; Lennig v. Ocean City Asso., 41 N. J. Eq., 606, 7 Stl. Rep., 491, 58 Am. Rep., 16; Booraem v. North Hudson Co. R. Co., 13 Stew. Eq., 557; Clark v. Elizabeth, 8 Vr., 120, 11 Vr., 172; Bayenne v. Ford, 14 Vr., 292; McCleary et al. v. Lourie et al., 80 N. H., 389, 117 Atl., 730.

**2. EASEMENT IN GROSS. Easement appurtenant, distinction.**

An easement, or right in the owner of land, to the use of that of another, as by an agreement in writing or deed, which confers some benefit or use in the estate of another, not inconsistent with its ownership will not be presumed to be in gross, or at large and personal, which does not pass by a conveyance; if it can fairly be construed to be "appurtenant," passing as an incident to the principal thing upon a conveyance, whether the word "appurtenances," be mentioned or not. (Post, p. 561.)

Citing: Jones on Easements, sec. 22.

**3. EASEMENT. Protection by injunction.**

Where the right "appurtenant" is established, its full enjoyment will be protected in equity by injunction.  (Post, p. 556.)

Citing:  State ex rel. Kincaid v. Hamilton, 109 Tenn., 276; Jones on Easements, sections 347, 436, 551, 19 Corpus Juris, sec. 138; Lennig v. Ocean City Asso., 41 N. J., 606, 7 Atl. Rep., 491, 58 Am.

154 Tenn.—35.

Rep., 16; Booraem v. North Hudson Co. R. Co., 13 Stew. Eq., 557; Clark v. Elizabeth, 8 Vr., 180, 11 Vr., 172; Bayenne v. Ford, 14 Vr., 292; McCleary et al. v. Lourie et al., 80 N. H., 369, 117 Atl., 730; Brew v. Van Deman, 6 Heisk. (53 Tenn.), 433.

4. LEASE. Termination. Merger. Lessee acquiring.

When tenant for years become seized of the fee, the term, mergers therein, and is terminated; and where lessee had the right to abandon lease and restore premises, the lessor cannot insist that lessee retain the property, and maintain the purpose of the lease longer than lessee might desire to do so. (Post, p. 556.)

5. LEASE. Provision for reversion on abandonment.

Where lease provides on cessation of a use for which property is leased, "thereupon this lease shall cease and determine, and said property shall immediately revert to said party of the first part, its successors and assigns," a reversion, if any, will not affect an easement in such property in favor of another, by a different conveyance, who is not a party to such lease. (Post, p. 563.)

---

*Headnotes 1. Certiorari, 11 C. J., section 341; 2. Landlord and Tenant, 35 C. J., section 51; 3. Easements, 19 C. J., section 156; Landlord and Tenant, 35 C. J., section 220; 4. Easements, 19 C. J., section 138; 5. Easements, 19 C. J., section 4; 6. Easements, 19 C. J., section 4 (Anno.); 7. Easements, 19 C. J., section 4; 8. Easements, 19 C. J., section 200; 9. Easements, 19 C. J., section 138; 10. Easements, 19 C. J., section 145; 11. Easements, 19 C. J., section 138.

FROM KNOX.

---

Appeal from Knox County Chancery Court to Court of Appeals, and by *certiorari* to Supreme Court.—HON. CHAS. HAYS BROWN, Chancellor.

GREEN, WEBB & COWAN and B. C. OGLE, for plaintiff.

CATES, SMITH, TATE & LONG, for defendant.

MR. JUSTICE SWIGGART delivered the opinion of the Court.

Note: Chancellor decreed in favor defendant; Court of Appeal in favor of complainant; Supreme Court modified so as to reverse Court of Appeals.

This cause has been brought to this court by the defendant, Knoxville Power & Light Company, by petition for *certiorari,* to review the decree of the Court of Appeals sustaining the original bill of the complainants and enjoining the defendant from dismantling the Fountain City Park, and from devoting said park to any use in conflict with the right of the complainants to use and enjoy it as contemplated in a certain lease contract between the defendant and the Fountain City Company, and in a deed from said company to the defendant, for a period coextensive with the term of the leasehold estate.

The petition for *certiorari* has been granted heretofore by this court, and the cause has been argued orally by counsel for both parties.

The complainants, in whose favor the Court of Appeals rendered its decree, are the owners, respectively, of lots or parcels of real estate adjoining the area known as the Fountain City Park.

After the original bill had been filed by the complainants, above referred to, other parties, residents and property owners in the Town of Fountain City, which is an unincorporated town of about thirty-five hundred inhabitants, in Knox county, were permitted to become complainants by petition, and it was sought in their behalf

to have the court decree that the Fountain City Park had been dedicated to the public use prior to the time it was acquired by the defendant.

The Court of Appeals held that no such dedication had been proved, and dismissed the bill in so far as this second class of complainants was concerned. No petition for *certiorari* was filed in their behalf, and the decree of the Court of Appeals that the park had not been dedicated to the public use is not open for review or modification by this court.

The petition for *certiorari* and the assignments of error thereunder present primarily the question whether the original complainants are entitled to have the park maintained as an open space by virtue of the recitations of the deed executed by the Fountain City Company to Frank McBee, their joint predecessor in title, and the recitations of a lease and deed executed by the Fountain City Company to the defendant, Knoxville Power & Light Company.

Prior to August 21, 1906, the Fountain City Company was the owner in fee and in possession of an area or square of land enclosed on its four sides by Fifth Avenue, College Street, Broadway and Hotel Avenue.

On August 22, 1906, the Fountain City Company executed a lease to the Knoxville Power & Light Company whereby the Fountain City Park was demised to the defendant, its successors and assigns "so long as said property may be used for park purposes by said party of the second part in connection with its line of railway extending from Knoxville to said property." The lease contained a covenant that the defendant should have and enjoy peaceable possession of the premises "so long as

said property may be used for park purposes as afore-
said." The leased premises included the southern part
of the square, above described, containing several acres,
and also a small tract separated from the first tract by
a street, and, perhaps, by other property. The southern
part of the square, included in the lease, is referred to
in the subsequent deed from the Fountain City Company
to the defendant "as the spring tract of what is known
as Fountain City Park," and the second tract, including
in the lease, is referred to in said deed "as the lake tract
of what is known as Fountain City Park." Said deed
contains the further recitation that "the above described
two parcels or tracts of land constitute what is known
as Fountain City Park, situated in Fountain City, Knox
county, Tennessee."

At the time of the execution of the lease of August 22,
1906, the northern part of said square, containing about
seven acres, which is the property now owned by the orig-
inal complainants in this case, was known as the Foun-
tain City Hotel property, a hotel then being located on
that part of the property now owned by the complainant,
H. E. Goetz.

The lease of August 22, 1906, provided that the lessor,
who was the owner of the hotel property, and the guests
or patrons of the hotel, or the purchaser of said hotel,
and his patrons or guests, should at all times have "free
and unobstructed access to the park and grounds on the
property included in the lease."

The eighth clause of the lease provided that in the event
the premises should cease to be used by the defendant,
its assigns or successors, for park purposes, in connection
with said line of railway, "thereupon this lease shall cease

and determine, and said property shall immediately revert to said property of the first part, its successors or assigns.''

The defendant held the premises in question under this lease until September 21, 1914, on which date the Fountain City Company executed a deed conveying the premises described in the lease to the defendant in fee simple, with covenants of general warranty, but with the covenant against encumbrances qualified as follows: ''Except that free and unobstructed access to the spring on the north line of the property first above described as being the spring tract of Fountain City Park, shall be given to Frank McBee, and to the public generally such access, however, to be from the north side of the property hereby conveyed and at or near the spring site.'' ·

The spring referred to in the foregoing clause of the deed is located on the north line of the spring tract of the Fountain City Park, which is the south line of the hotel property now owned by the complainants.

On September 10, 1914, eleven days before the execution of said deed from the Fountain City Company to defendant, the Fountain City Company conveyed to Frank McBee, by warranty deed, the above-mentioned hotel property, which is the northern part of the square above referred to, containing about seven acres. This deed was duly put of record in the office of the Register of Knox county of September 14, 1914. Following the description of the property conveyed, and immediately preceding the *habendum* clause, the deed contains the sentence: ''Also the right of access to the adjoining park and use of spring on same.'' The *habendum* clause of the deed to McBee is as follows: ''To have and to hold the

said premises to the said party of the second part, his heirs and assigns forever."

After the purchase of this hotel tract by McBee, he caused it to be subdivided into lots, ten in number, as shown on a map, exhibit No. 1 to the deposition of Frank Jones in this cause. Eight of these lots were sold by Mc-Bee, and conveyed by deeds expressly referring to the park as the southern boundary of each lot. The other two lots were sold by McBee to C. A. Gillespie, and in the deed thereto reference was made to a map on record for the dimensions and boundaries. Gillespie conveyed his two lots to the complainant Goetz by a deed in which he expressly conveyed to Goetz whatever rights, licenses and privileges he held in the Fountain City Park, and to the spring and waters thereon under and by virtue of the deeds under which he held title to lot 1 A of the property conveyed. The present owners of the other eight lots of this sub-division, who are complainants, hold under deeds referring to the park as their southern boundary.

It appears from the record that after the execution of the deed conveying the fee to the park property to the Knoxville Power & Light Company, in 1914, that company continued to maintain the park as theretofore, until shortly before the original bill was filed in February, 1923. The bill averred that the Power & Light Company had announced its purpose to subdivide the park prop-erty into building lots, streets and alleys, and to sell the same, and that such sale had been advertised; where-upon the bill was filed for a decree declaring the rights of the parties in and to the park property, and to enjoin

defendant from selling, transferring, incumbering or otherwise disposing of the property.

The bill also prayed that the property to be declared to have been dedicated to the public use, but, as stated, the Court of Appeals decreed against this contention, and that part of the decree of the Court of Appeals has not been brought to this court for review.

The original complainants were denied any relief in the chancery court, and their assignment of error, which the Court of Appeals sustained, was that, by reason of the recitals, covenants and provisions in their deeds, and in the deeds of those from whom they claim, they were entitled to have the Fountain City Park maintained for their benefit, and to enjoin the sale of the property for other purposes.

The Court of Appeals construed the deed of the Fountain City Company to Frank McBee as conveying to McBee a right to the use and enjoyment of the park in the same manner as it was then being operated; that this right was an easement appurtenant to the property conveyed to McBee, and that his successors in title, the original complainants, were entitled to assert this easement and to protect it by injunction.

The Court of Appeals further reached the conclusion that the lease of August 22, 1906, whereby the Knoxville Power & Light Company took possession of the property in question for use as a park, was for a term of ninety-nine years, and the decree rendered by that court was that the defendant should be enjoined from dismantling the park, or devoting it to any use except as contemplated by the terms of the lease, ''for a period coextensive with the term of the leasehold estate.''

We cannot concur in the finding of the Court of Appeals that the lease referred to was for a term of ninety-nine years, and, in fact, it is not contended by counsel for either party in this court that the lease can be so construed. By the terms of the lease the Knoxville Power & Light Company had the right at any time to abandon the maintenance of the park, and to restore the premises to the lessor, Fountain City Company. The lessor was given no right, by the terms of the lease, to insist that the Power & Light Company retain the property and maintain the park longer than it might desire to do so.

This being true, we think that when the Knoxville Power & Light Company acquired the fee to the leased property, by the deed of September 21, 1914, the lease was extinguished, and thereafter the Power & Light Company held the property solely under and by virtue of the deed executed to it by the Fountain City Company.

If the complainants have any right of use or easement in the park property, it must be by virtue of the clause in the deed executed by the Fountain City Company to Frank McBee, which was duly put of record before the execution of the deed from the Fountain City Company to the defendant; the language in the deed being a conveyance to McBee and his assigns, "also the right of access to the adjoining park and use of spring on same."

For many years prior to the conveyance of the hotel property to McBee the park property had been maintained as a park, open to the public, although under such circumstances as that the right of private ownership therein was preserved. As found by the Court of Appeals, it was maintained as a commercial park, incident

to the operation of the lines of the street railway company, as distinguished from a park within the entire control and ownership of the public. At the time of the execution of the deed to McBee, no right existed in his vendor to require the Power & Light Company to maintain the park as a street railway park, or to expend any thing on its maintenance, for by the terms of the lease, which was on record, the Power & Light Company was entitled to restore the property to the possession of the lessor at any time, and thereby terminate its responsibility for the maintenance of the park.

It is important, therefore, to determine what rights, if any, McBee could have asserted against his vendor, Fountain City Company, if the park property had been surrendered to the Fountain City Company by the Power & Light Company, as it was authorized to do under the terms of the lease.

In *State ex rel. Kincaid* v. *Hamilton,* 109 Tenn., 276, this court granted injunctive relief to the complainant, to compel the defendant to open a street upon which complainant's property fronted, applying "the well-recognized rule that those who buy lots abutting on a street laid out on a map or plat have a right to insist upon the opening of said street." The case did not, however, turn upon the theory that the streets laid out on the map had been dedicated to the public use. The principle applied by the court was stated in a quotation from Jones on Easements, section 347, as follows: "When land is sold by reference to a plan upon which several streets and avenues are laid out, the grantee does not necessarily acquire an easement in all such streets or ways. He acquires an easement in the street or way up-

on which his lot is situated, and in such other streets or ways as are necessary or convenient to enable him to reach a highway.'' The relief granted was, therefore, based clearly upon a finding that the complainant had acquired an easement appurtenant to the lot purchased by him, without regard to whether the conduct of the seller of the lot amounted to a dedication of the streets indicated on the map to the public use.

Reference to the authorities available has disclosed that other jurisdictions make no distinction in principle between streets or avenues and parks or commons, when it is sought to assert an easement in such street, avenue, park or common in favor of an abutting lot by reason of the fact that such lot was sold and conveyed with reference to a recorded map indicating that the lot sold fronts on such street or park.

In Jones on Easements, section 436, the author says:

''In the same way a parcel of land designated on a plat as a park, public square or common with reference to which lots fronting upon it have been sold, is irrevocably dedicated to public use. 'There is no difference in the principles applicable to the dedication of public streets and a public square or park. In each case the dedication is to be considered with reference to the use to which the property may be applied or the purpose for which the dedication is made, and this may be ascertained by the designation which the owner gives to land upon the map or plat, whether it be a ''street,'' ''square'' or ''park.'' ' ''

In the same work, at section 551, it is said:

''An encroachment upon a public park may be enjoined in a suit by an individual whose property is injured by

the encoachment; as, for instance, the owner of a dwelling-house and land fronting on a common or public park can maintain a bill for an injunction against his neighbor who seeks to destroy the common by enclosing a large part of it for his own use; for the reason that the complainants property is greatly enhanced in value by its situation, fronting the common, and would be greatly injured by the encroachment upon the common. He is not a mere volunteer, assuming to protect the rights of the public, but a party aggrieved, who is seeking to protect his private interests.''

In Corpus Juris, volume 19, section 138 of the article on Easements is as follows:

''Where land is represented on a map or plat as a park, public square, or common, the purchasers of adjoining lots acquire as appurtenant thereto a vested right to have the space so designated kept open for the purpose and to the full extent which the designation imports. The sale and conveyance of lots according to such plat implies a covenant that the land so designated shall never be appropriated by the owner or his successors in interest to any use inconsistent with that represented on the original map. And the purchaser of an adjoining lot acquires such an easement in the park or public square in front of it as entitles him to proceed in equity to prevent by injunction the appropriation of the park or square to any use other than that designated on the map or plat by reference to which he purchased his lot; he is not a mere volunteer seeking to enforce the rights of the public; he has a special interest of his own to protect.''

Practically all of the authorities cited in support of the foregoing quotation from Corpus Juris deal with

parks, public squares or commons which were held to have been dedicated to the public use, either expressly or by conduct on the part of the owner which was construed by the courts as amounting to a dedication, sometimes by the invocation of principles of estoppel.

A case which we think directly in point is *Lennig* v. *Ocean City Asso.*, 41 N. J. Eq., 606, 7 Atl. Rep., 491, 58 Am. Rep., 16. This case is digested in section 236 of Jones on Easements as follows:

"A religious camp meeting association having laid out and mapped into lots certain land on the seashore, reserving several blocks, extending from the sea inland as a camp-ground, sold lots by the map fronting on the blocks reserved, whereon the purchaser erected a summer residence. It was held, that the association thereby had entered into a covenant with the purchaser that these blocks should be devoted to the uses indicated, and that it had no right to divide these blocks into lots for the purpose of leasing them for a term of years, for the building of permanent cottages thereon."

In the case just referred to the court referred to the principle that the conveyance of lots by reference to a map on which streets, parks and squares are laid out binds the grantor not to use the portions so devoted to the common advantage otherwise than in the manner indicated, and held that the principle was not confined to cases in which the land involved is dedicated to the public use. The court said:

"This principle has been asserted most frequently for the purpose of supporting dedications to uses strictly public; but it is by no means necessary that such a use should be created. As was said by this court in *Booraem*

v. *North Hudson Co. R. Co.,* 13 Stew. Eq., 557, with regard
to the dedication of a highway by means of conveyances
to private persons which referred to a proposed street
over other lands of the grantor, 'the private rights of
the grantees precede the public right, and are the source
from which the public right springs. By such convey-
ances the grantees are regarded as purchasers, by implied
covenant, of the right to the use of the street as a means
of passage to and from their premises, as appurtenant to
the premises granted, and this private right of way in
the grantees is wholly distinct from and independent of
the right of passage to be acquired by the public.' From
this doctrine, it of course follows that such distinct and
independent private rights in other lands of the grantor
than those granted, may be acquired by implied cove-
nant as appurtenant to the premises granted, although
they are not of such a nature as to give rise to public
rights by dedication. The object of the principle is not
to create public rights, but to secure to persons purchas-
ing lots under such circumstances those benefits, the
promise of which it is reasonable to infer has induced
them to buy portions of a tract laid out on the plan in-
dicated. *Clark* v. *Elizabeth,* 8 Vr., 120, 11 Vr., 172; *Bay-
enne* v. *Ford,* 14 Vr., 292.''

In *McCleary et al.* v. *Lourie et al.,* 80 N. H., 389, 117
Atl., 730, the owner of a tract of land bounded on one
side by the shore of a lake caused a survey and plat to be
made by which the property was divided into a number
of lots designed for summer homes, from all of which
access to the lake shore was through a grove and beach
designated on the map. The advantages of the lake,
beach and grove were stressed in advertising the lots for

sale, and prospective purchasers of lots were given to understand that the grove and beach were to be kept open for their use. There was no specific grant to the purchasers of the lots of an easement in the grove, nor was there any express covenant with respect to its use. The suit was brought against the defendants, who had purchased the grove from the original owner, after the complainants had purchased their lots, for an injunction to restrain the defendants from putting the grove to a use inconsistent with the rights of the complainants, as above outlined.

The Supreme Court of New Hampshire sustained the bill of the complainants under the principles of estoppel and held: "Having thus induced the plaintiffs to purchase lots enhanced in value by rights in the grove and beach, the grantor and those claiming under her with knowledge are estopped to deny the existence of those rights."

The affirmative language of the deed from the Fountain City Company to McBee, conveying to him the right of access to the adjoining park, and the right to use the spring located thereon, cannot have less force and effect than the mere reference to a recorded map showing the location of such a park adjoining the property conveyed. We hold, therefore, that the deed to McBee created in his favor an easement in the park property, then recognized as such, and that if the property had been surrendered to the Fountain City Company by the Knoxville Power & Light Company, McBee could have compelled the Fountain City Company to retain the property as an open space or park, and not to devote it to any use inconsistent therewith.

We further hold that the Knoxville Power & Light Company, by the deed of September 21, 1914, took the property described therein subject to this easement in favor. of McBee as the owner of the hotel tract adjoining it on the north.

In *Brew* v. *Van Deman,* 6 Heisk. (53 Tenn.), 433, one Kaylor sold a lot in Chattanooga to the complainant. At the time of the conveyance he was also the owner of an adjoining lot on which there was a walkway, ten feet in width, leading from the street on which the property fronted to the entrance of the post office building. In his said conveyance to complainant Kaylor covenanted and bound himself, his heirs and representatives, to leave this walkway open forever ''for the public convenience and the use of the adjoining lots.'' The complainant erected a building on the lot so purchased, with doors and windows opening upon this walkway. Subsequently, Kaylor sold the other lot, including the walkway, to the defendant, and the defendant constructed an obstruction thereon.

This court sustained the suit of the complainant for an injunction against the defendant, requiring him to refrain from interfering with the unobstructed use of said walkway by complainant and the public. The court held:

''The defendants had, therefore, no right, by virtue of the conveyance from Kaylor, which was executed after the registration of complainant's deed, to obstruct any portion of said passway by the erection of a stairway therein.''

Responding to the contention that the covenant contained in complainant's deed was a personal covenant, not running with the land, the court said:

"This case is very different, as there is an express covenant that the passway shall forever remain open for the use, amongst other uses specified, of the very lot conveyed by the deed containing said covenant, which is equivalent to an express grant of the easements to complainant."

In the present case, it is contended by the petitioner that the easement created in the deed from Fountain City Company to McBee is an easement in gross and not an easement appurtenant to the land conveyed.

We are unable to agree with this contention. The easement was created by express language in the deed conveying the hotel tract, adjoining the park property. It follows immediately the description of the property conveyed and precedes the *habendum* clause of the deed. The value of the easement to McBee arose out of the fact that he was the owner of the adjoining property. We have not found any case in which it was held that such an easement, created by a deed conveying property abutting such a park, is an easement in gross and not appurtenant to the property conveyed, and the rule that an easement is not to be presumed to be in gross when it can fairly be construed to be appurtenant, seems to be well established.

It is stated in Jones on Easements, section 47, as follows:

"As easement is never presumed to be in gross when it can fairly be construed to be appurtenant to some estate. 'If it be in its nature an appropriate and useful adjunct of the land conveyed, having in view the intention of the grantee as to its use, and there being nothing to show that the parties intended it to be a mere personal right,

154 Tenn.—36.

it should be held to be an easement appurtenant to the land, and not an easement in gross, the rule for the construction of such grants being more favorable to the former than to the latter class.' ''

We are further of the opinion that the complainants, as McBee's successors in title to the hotel tract, may claim and enforce this easement, regardless of whether it was specifically mentioned in the mesne conveyances or not, and it is, therefore, unnecessary to determine whether the specific references in all of the deeds, except the one from McBee to Gillespie, to the park as the south boundary of the lots conveyed, is a sufficient reference to the easement to amount to an express conveyance of it.

In section 22 of Jones on Easements, it is said:

"An easement which by grant, reservation or prescription is appurtenant to land is not a mere privilege to be enjoyed by the person to whom it is granted or by whom it is reserved. It passes by a deed of such person to his grantee and follows the land without any mention whatever.''

And to the same effect is the text of section 23 of the same work, as follows:

"The term 'appurtenances' is an apt one for passing an easement, such as a right of way, but it is not essential to the passing of an existing easement, which is in fact appurtenant to the land conveyed. But when an easement, although not originally belonging to an estate, has become appurtenant to it, either by grant or prescription, a conveyance of that estate will carry with it such easement, whether mentioned in the deed or not, and whether the word 'appurtenances' be mentioned or not, although

it may not be necessary to the enjoyment of the estate by the grantee."

It is contended for the petitioner that the easement contained in the words "right of access to the adjoining park," covers nothing more than the right to pass through the park in order to reach the spring.

We cannot agree with this contention. We think the language employed means that the owner of the hotel tract was given the right of entry into the park as a park, and that, by necessary implication, the right to the use and enjoyment of the park was included.

Petitioner refers to the fact that the deed of September 21, 1914, from the Fountain City Company to the petitioner, contains the reservation to McBee, and to the public generally, of "free and unobstructed access to the spring," etc., with the qualification that such access should be from the north side of the property, and at or near the spring site; and it is contended that this should be looked to in determining the meaning and effect of the language creating the easement in the earlier deed to McBee.

We do not think that this recitation in petitioner's deed can be taken as an indication of the construction placed upon the McBee deed by the Fountain City Company, for the reason that the reservation in the deed to defendant was made for "the public generally," as well as for McBee; but at all events, neither McBee, nor the complainants claiming under him, were parties to the deed to defendant, and nothing contained therein could have any binding effect upon them.

It is further contended for the petitioner that the easement should be confined to that part of the park which

is within the square referred to in the first part of this opinion, known as the spring tract, and should not be held to extend to the "lake tract" of the park, which is separated from the spring tract by the street known as Broadway, and, perhaps, by other intervening property.

We would be inclined to sustain this contention but for the fact that in the deed from the Fountain City Company to the petitioner, Knoxville Power & Light Company, whereby both said tracts were conveyed to the petitioner, each tract is specifically referred to as a part of the Fountain City Park, with the following additional designation: "The above described two parcels or tracts of land constitute what is known as Fountain City Park, situated in Fountain City, Knox county, Tennessee." We find no evidence contradicting this declaration in petitioner's deed that the park was composed of both tracts, and that being true, the reference to the "adjoining park" in the deed from the Fountain City Company to McBee must be held to include the entire park, including both tracts.

It follows from the foregoing that we must sustain the assignment of error made in support of the petition for *certiorari*, that the Court of Appeals erred in construing the lease of August 22, 1906, as for a term of ninety-nine years, and in decreeing that the petitioner should be enjoined from dismantling the park, or devoting it to any use in conflict with complainant's use and enjoyment of it as set out in the lease contract for a period coextensive with the term of the leasehold estate. But we do not find that the Court of Appeals was in error in sustaining the third assignment of error of complainants in that court to the extent that it asserted the right of the com-

plainants to have the Fountain City Park retained as a park and to enjoin the sale of the property for other and inconsistent purposes, by reason of the recitals, covenants and provisions of the deed from the Fountain City Company to Frank McBee, the complainants' predecessor in title.

The decree of this court will modify the decree entered in the Court of Appeals so as to make the injunctive relief awarded complainants conform to the finding contained in the preceding paragraph.

The costs incident to the petition for *certiorari* will be paid by the petitioner, the Knoxville Power & Light Company.