IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 22, 2004 Session

JAMES L. PEACH, ET UX. v. ROBERT WESLEY MEDLIN, ET AL.

A Direct Appeal from the Chancery Court for Benton County
No. 9637     The Honorable Ron Harmon, Chancellor

No. W2003-02152-COA-R3-CV - Filed April 28, 2004

Land owner filed complaint alleging trespass and seeking the removal of structures and signs erected by appellants encroaching upon his property. Owner further sought injunction prohibiting appellants from continued, unauthorized use of roads running across his property. The trial court found that appellants had an easement for use of one of two roads. The trial court's final order granted owner's request for attorney's fees. Both parties raise issues on appeal. We affirm in part and reverse in part.

Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Reversed in Part

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

Phillip G. Hollis, Camden, For Appellants, Robert Wesley Medlin, Jimmy D. Medlin and Christopher D. Medlin

Charles N. Griffith, Waverly, For Appellees, James L. Peach and wife, Venetia K. Peach

OPINION

This case involves a dispute over appellants' right to use roadways located upon or running across appellee's real property.

John Robertson ("Robertson") is the former owner of a tract of land located on the western side of State Highway 641, in Camden, Benton County, Tennessee. The entire tract of land has been zoned for commercial use since at least 1991. On February 27, 1991, Robertson entered into an agreement with appellant Jimmy Medlin, whereby Robertson agreed to sell a tract of land, to be

hereinafter referred to as the Flea Market Property.[1]  It is undisputed that the Flea Market Property was zoned exclusively for commercial use at the time of the sale and purchase.

The Flea Market Property is located approximately 700 feet west of the centerline of State Highway 641.  The record indicates that the Flea Market Property did not front any public street at the time of the sale.  Robertson testified that the Flea Market Property was approximately 250 feet from the north end of a public roadway known as Robertson Avenue.  As a result of the location of the Flea Market Property, Robertson allowed Jimmy Medlin access to the property over a 15.0' gravel road running along the east boundary of the tract from Robertson Avenue.  Robertson testified that he gave Jimmy Medlin permission to use the 15.0' road for as long as Robertson owned the property.  Appellant(s) did not record the deed for the Flea Market Property until 1999.

On April 8, 1994, Christopher Medlin purchased Lot 14 from Benton County Developmental Services, Inc., and the deed was recorded on June 8, 1995.  Lot 14 is directly adjacent to the southern boundary of the Flea Market Property, and is bordered to the south by a public roadway known as Cane Street.  Cane Street intersects with Robertson Avenue a few feet to the southeast of Lot 14.  As a result of this sale, the Flea Market Property had direct access to Cane Street, near the intersection of Cane and Robertson Avenue.

On April 18, 1995, Robertson sold Jimmy Medlin a 2.004 acre tract of land located to the immediate west of State Highway 641.[2]  This tract shall hereinafter be referred to as the Shopping Center Property.  Robertson testified that he gave Jimmy Medlin permission to use a 50.0' "proposed" street located on the northern boundary of the lot for ingress and egress to the Shopping Center Property.  The record indicates that the street is currently used by customers and delivery trucks to access the Shopping Center Property.

In 1995, appellant(s) obtained a permit to construct a building on the Shopping Center Property.  Soon thereafter, appellant(s) built what will hereinafter be referred to as the Koffman Jewelry Building.  As constructed, the concrete foundation of the Koffman Jewelry building encroached 12 to 18 inches upon property that Robertson would later sell to appellee James Peach ("Peach" or "Appellee").  In a letter to Peach dated November 5, 1996, Jimmy Medlin acknowledged the offending construction, stating:

---

[1] Robertson testified that his agreement for the sale of the Flea Market Property was with Jimmy Medlin.  The Warranty Deed signed by Robertson, and entered as an exhibit at trial, identifies Jimmy Medlin's son, Christopher Medlin, as the purchasing party.  From our review of the record, it is apparent that Christopher Medlin is the named owner of the Flea Market Property.

[2] Robertson again testified that he dealt with Jimmy Medlin in the sale of this tract of land.  The Warranty Deed for this property lists Jimmy Medlin's son, Robert Wesley Medlin, as the purchaser.  Robert Wesley Medlin is the named owner of this property.

> After Aaron Edwards surveyed my property, I discovered that my building was being constructed approximately 12" - 18" on the proposed 50' foot roadway owned by you. I therefore had the construction disassembled and moved south 3 feet. I have not moved the concrete slab but acknowledge that the slab is on property owned by you and agree to have it removed promptly upon your request.

At the time of the complaint in this matter, the portion of the concrete slab/foundation encroaching upon appellee's property had not been removed. The parties further disputed whether the overhang of the Koffman Jewelry Building encroached upon Peach's property.

Robertson sold his remaining 22.237 acre tract to Peach on January 19, 1996. Peach's land is bordered on the west by the Flea Market Property, to the east by State Highway 641, and to the east/northeast by the Shopping Center Property.

The primary dispute in this case centers around a 22.0' gravel road that Robertson built connecting the land where the Flea Market Property now sits to State Highway 641. The road runs through the heart of the property now owned by Peach, and provides direct access to the Flea Market Property from State Highway 641. Robertson testified that he granted Jimmy Medlin temporary use of the gravel road for ingress and egress to the Flea Market Property, stating:

> Q. So, now, there is another road that we have referred to as a 22 foot gravel road that extends from Highway 641 backward to the West toward the flea market building. Are you familiar with that road, as well?
>
> A. Yes, I built the road myself.
>
> Q. Approximately when did you build the bridge that fronted on Highway 641?
>
> A. I believe the bridge was built somewhere around 1987. It wasn't completed. It needed guard rails. It's a hazard as it is and, also, I didn't have a permit from the highway for entrance at that point.
>
> Q. Once you built that bridge across a ditch next to 641 – once you cross that bridge what would you be facing in 1987?
>
> A. What would I be facing?
>
> Q. What would you be coming onto when you crossed that bridge? What situation would you face?

A. I would be coming onto my property.

Q. And, what was the condition of your property back then?

A. Well, it was undeveloped. I built the road to get in to the property to maintain it for my own use.

Q. Let me ask you, did you subsequently fill that land?

A. Yes, I did.

Q. Approximately when did you fill that land?

A. I believe it was in 1992.

Q. Okay. And, as you stated here – I think you stated – about when was it that you sold the flea market property to Mr. Jimmy Medlin?

A. I believe it was in 1991.

Q. So, after you filled the property in 1992 did you then fix a road surface on it?

A. No, I didn't fix a road surface. I just filled it with dirt.

Q. What happened to that surface then from there, how did it develop?

A. Well, Mr. Medlin asked for permission to put some gravel on the road[3] and to use it temporarily and I told him that I was planning to sell the property and he could use that road until the property was sold and then he would have to make arrangements with the man that bought the property.

Q. And, did he agree to that?

     MR. HOLLIS: Objection.

---

[3] The evidence in the record is undisputed that Jimmy Medlin helped pay for part of the cost to gravel the 22.0' road. Robertson testified that Jimmy Medlin offered to pay for part of the graveling cost as a set-off against the total amount he still owed Robertson for the Flea Market Property.

A.  Yes, he went ahead and put some gravel on it.

THE COURT: Overruled.

Jimmy Medlin testified that Robertson had already filled the road and built the base at the time of his purchase of the Flea Market Property.  He further denied that Robertson made any mention of temporary access to the Flea Market Property via the road.

The parties dispute the extent to which the 22.0' gravel road can be considered a public thoroughfare.  Although not designated as a public road, Jimmy Medlin and his wife Donna Medlin both testified that the public uses the 22.0' road to access the flea market, and a church and daycare center located behind the property.  Jimmy Medlin testified:

> Q.  Mr. Medlin, what is the character or the use that is made of the 22 foot gravel road that's been shown here on the plat as leading from Highway 641 to the flea market?  Who uses it?
>
> A.  Who uses it?
>
> Q.  Yes.
>
> A.  Well, obviously we do and the people coming to and from the flea market.  There's a Little Folks Preschool behind it probably 80 or 90 percent, maybe more than that use it.  There's a church just behind it that use it and the biggest part of the people in the neighborhood, Robertson and Cane Street and there's another street there that goes on the other side a block away.  As they are going to and from Wal-Mart going points north, I'd say most of them if not all of them do.
>
> Q.  Now, are there any governmental entities that use it?
>
> A.  Well, of course, sure.  All of the government services come in there.  I mean from garbage pickup to utility people, you know.  All of them use it to my knowledge.  I've seen most of them at one time or another over the years, uh-huh.

Peach contends that there is no public purpose for the road and further asserts that there is no public investment in, or maintenance of, the roadway.

On December 23, 1997, attorney J.P. Bradley ("Bradley") sent a letter to Robert Wesley Medlin on Peach's behalf, addressing several alleged trespasses by appellant(s) upon Peach's property.  The letter states:

I represent James L. Peach, Sr. regarding a trespass made by yourself over and upon his real property which adjoins the west boundary of Highway 641 in Benton County and the City of Camden.

These affirmative trespasses are as follows:

1.) A sign encroachment near the West boundary of Highway 641 and the use of Mr. Peach's property as [a] driveway including paving [the] driveway without first obtaining Mr. Peach's permission.

2.) The encroachment of the Koffman Jewelry building and failure to observe city set backs.

3.) The use of a 22' gravel road from Highway 641 to the Medlin flea market. Mr. Medlin maintained the said road without permission of Mr. Peach therefore creating more liability for Mr. Peach.

4.) The use of a 15' gravel road from Robertson Avenue to Medlin Flea Market.

5.) The encroachment of sheds attached to Medlin flea market and failure to observe mandatory set-backs.

All of the above items detract from the property rights and property values which rightfully accrue to Mr. Peach.

All of the above uses and encroachments are apparently claimed as of right because no inquiry or effort was made to secure authority or approval for this usage.

Apparently you claim a right of passage or ownership of certain improved gravel driveways across Mr. Peach's property because you have a sign on one and practice use of all private driveways upon the Peach property.

Therefore this letter is for the purpose of advising you to forthwith and completely remove all evidences and instances of your use of Mr. Peach's property immediately and without delay.

I would further request that you contact my office at the above number within ten (10) days. Failure to do so will be viewed as further evidence of your trespass and refusal to cure.

Appellant(s) failed to comply with the above written request, and on June 23, 1998, Bradley sent Robert Wesley Medlin a second letter stating:

> This letter is to advise you again that the trespassing usages you have effected on the James Peach property have still not been removed or stopped after a period of six (6) months. You ignored the demand of the letter of December 23, 1997, a copy of which is attached. I am also advised that you have increased the offending use by erecting additional signs, and continuing to use a roadway that you have built or improved across the Peach property.
>
> Please stop this use at once and remove all offending signs, concrete or gravel or other use that infringes upon the property of James Peach.

On August 17, 1998, Peach[4] filed a complaint against Robert Wesley Medlin and Jimmy Medlin, seeking, *inter alia*, an injunction prohibiting appellants from using both the 22.0' gravel road and the 15.0' road from Robertson Avenue to the Flea Market Property. The complaint also seeks a mandatory injunction to remove the encroachments referred to in their attorney's letter and to "cease all offending and encroaching uses and trespasses," described as follows:

> A.) Paved roadway from Highway 641 to Koffman Jewelry Store.
>
> B.) Sign encroachment.
>
> C.) Koffman Jewelry building encroachment of 1.85 feet.
>
> D.) 22 foot wide gravel road from Highway 641 to Medlin Flea Market.
>
> E.) 15 foot wide gravel road from Robertson Avenue along the east boundary of Parcel 4.001 Tax Map 78.
>
> F.) Sheds of the Medlin Flea Market building and area lighting fixtures.

The complaint also seeks damages, attorney's fees and expenses.

---

[4] Peach's wife, Venetia K. Peach joined in the complaint. However, in the interest of consistency, we will continue to refer to appellees' interest(s) and involvement in this case through a singular reference to James Peach.

Jimmy Medlin and Robert Wesley Medlin filed a joint answer on July 6, 2001, seeking, *inter alia*, dismissal of the complaint for failure to state a claim upon which relief may be granted, and failure to join indispensable parties, Robertson, his wife Christine Robertson, and Christopher D. Medlin. The answer denied all material allegations of wrongdoing and asserted the special defenses of easement by implication, implied dedication, estoppel, and negative reciprocal servitudes or easements. The Medlin's also moved the court to join Christopher Medlin as a party-defendant pursuant to Tenn. R. Civ. P. 19, to grant them leave to join Robertson and his wife as party-defendants by summons and third-party complaint, and to "declare the rights of the respective parties in the subject matter and that defendants have a judgment that the existing roads constitute easements for ingress and egress for the defendants and the public."

A hearing was held on July 9, 2001, upon the Medlins' motion or request to add Christopher Medlin as a party-defendant. The court permitted the joinder of Christopher Medlin as a party-defendant, but the Medlin's request to add Robertson and his wife as additional defendants was denied.[5] After hearing testimony from Robertson and Gary Farmer, Assistant City Clerk for the City of Camden, Tennessee, the court reset all remaining matters for hearing on October 10, 2001.[6]

A non-jury trial was held on October 10, 2001. The trial court filed a written order of Judgment on December 27, 2001, which states:

> THIS CAUSE then came on to be heard on October 10, 2001, before the Honorable Ron Harmon, Chancellor, upon the Complaint, Answer thereto, stipulation of the parties admitting into evidence the survey of Aaron Edwards, transcript of the partial hearing had on July 9, 2001, testimony of witnesses and the parties, exhibits pursuant thereto and the entire record in this cause.
>
> WHEREFORE, at the close of hearing the Court finds that the roadway from the flea market to Highway 641 designated as a 22' gravel road did not exist on February 27, 1991 when the Medlin property was purchased; that John Robertson later gave Medlin permission to use the 22' gravel road; that Medlin requested permission from Robertson to gravel the road; that Medlin did not record his deed until December 20, 1999 and that it contained no express grant of easement; that the plaintiffs deed was recorded on January 19, 1996; and that the parties shared a common grantor.

---

[5] The Medlin's apparently did not attempt to proceed against the Robertson's pursuant to Tenn. R. Civ. P. 14.

[6] We note that the court's order setting forth its findings from the July 9, 2001 hearing was not included in the record on appeal.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

1.) That the defendants as their interests may appear are determined to have an easement 15 foot in width adjacent to the west boundary line of the plaintiffs extending from the Robertson Avenue and Cane Street intersection North to the location designated as the 22' gravel road.

2.) That the defendants as their interests may appear are determined to have an easement 50' in width by 386.14' in length adjoining: the north boundary line of the property deeded to Robert Wesley Martin at Deed book 224, page 128, Register's Office, Benton County, Tennessee, and the west right of way margin for Highway 6[4]1.

3.) That the defendants are determined to have no interest or easement for ingress and egress in, upon or along the road designated on the plat of Aaron Edwards as "22.0' gravel road," which extends from the flea market to Highway 641.

4.) That the plaintiff shall mark his boundary lines, and the defendants shall remove any encroachment or offending use upon the plaintiff's property, pursuant to the plaintiffs' counsel's letter demand dated December 23, 1997.

5.) That the failure of the defendants to observe the setback zoning requirements of the City of Camden for the B-2 commercial zone address itself to said City for enforcement, and is not a matter which the plaintiffs may enforce.

6.) That despite the plaintiffs' claim of damages for trespass and encroachment by the defendants, no damages shall be awarded to the plaintiffs because the original use was by permission.

7.) The plaintiffs requested an award of attorney fees which services were required to protect their property rights. Counsel shall submit an affidavit as to time, effort and requested fees. The Court will determine fees and costs after appeal.

On January 13, 2003, the trial court entered an order upon Peach's petition for attorney's fees on his claim for willful trespass. The court found that the lawsuit was necessary to compel the removal of various land uses by appellants, and found that appellants "committed willful trespass"

-9-

and that attorney's fees were justified. The court thereby awarded Peach $13,410.00 "for necessary and reasonable attorney fees to remove the defendants trespass and offending use of the plaintiffs real property...."

Appellants filed a Notice of Appeal on February 7, 2003. We restate their issues for review as follows:

> Whether the trial court erred in denying appellants an easement for ingress and egress over the 22.0' gravel road running east and west from Highway 641 to the Flea Market property.
>
> Whether the trial court erred in "failing to find that the [22.0' gravel road] was public by operation of law under the zoning ordinance.
>
> Whether the trial court erred in refusing to find, designate, classify, or consider the 22.0' gravel road as a public thoroughfare where the "uncontroverted evidence required a finding" of an implied dedication of the road by Robertson.
>
> Whether the trial court erred in awarding [Peach] attorney's fees.

Peach presents the additional issue of whether the trial court erred in granting appellants an easement for the 15.0' gravel road located on the western side of his property, and connecting or extending from Robertson Avenue to the entrance to the Flea Market Property.

Since this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. *See* Tenn. R. App. P. 13(d).

### I. Easement of Ingress and Egress Over the 22.0' Gravel Road

Upon our review of the record, we find that appellants' first three issues can be consolidated and restated as presenting the general question of whether the trial court erred in finding that appellants did not have an easement for ingress and egress over the 22.0' gravel road.

In *Pevear v. Hunt*, 924 S.W.2d 114, 115-16 (Tenn. Ct. App. 1996), this Court stated:

> An easement is a right an owner has to some lawful use of the real property of another. *Brew v. Van Deman*, 53 Tenn. (6 Heisk) 433 (1871). Easements can be created in several ways in Tennessee, including: (1) express grant, (2) reservation, (3) implication, (4) prescription, (5) estoppel, and (6) eminent domain. Easements can be

-10-

divided into two broad classes, easements appurtenant, and easements in gross. In an easement appurtenant, there are 2 tracts of land, the dominant tenement, and the servient tenement. The dominant tenement benefits in some way from the use of the servient tenement. Easements in gross are simply a personal interest or right to use the land of another which does not benefit another property, or dominant estate, thus easements in gross usually involve only one parcel. An easement appurtenant to land is favored over an easement in gross in Tennessee. *Goetz v. Knoxville Power & Light Co.*, 154 Tenn. 545, 290 S.W. 409 (1926).

From our reading of appellants' brief in this matter, we conclude that appellants' argument that they are entitled to an easement over the 22.0' road is premised primarily upon the theory of easement by implication. This said, we briefly note that there is no question that neither Robertson nor Peach expressly granted appellants an easement of ingress or egress over the road. "An express grant of an easement is an irrevocable license to enter upon land of another and must be in writing." *Scruggs v. Bell*, No. 01A01-9610-CH-00475, 1997 WL 33620291, at *4 (Tenn. Ct. App. May 9, 1997) (citing *Childers v. William H. Coleman Co.*, 122 Tenn. 109, 126 (1909)). It is clear from the record that the deed involved did not contain an express grant of an easement over the 22.0' road in favor of appellants.

The party asserting an implied easement has the burden of showing "the existence of all facts necessary to create by implication an easement appurtenant to his estate." *Line v. Miller*, 43 Tenn.App. 349, 309 S.W.2d 376, 377 (1957); *The Pointe, LLC v. Lake Management Assoc., Inc.*, 50 S.W.3d 471 (Tenn. Ct. App. 2000). The party asserting the existence of an easement by implication must prove three elements: "... (1) A separation of the title; (2) Necessity that, before the separation takes place, the use which gives rise to the easement shall have been so long continued and obvious or manifest as to show that it was meant to be permanent; and (3) Necessity that the easement be essential to the beneficial enjoyment of the land granted or retained...." *Johnson v. Headrick*, 34 Tenn.App. 294, 237 S.W.2d 567, 570 (1948) (quoting 17 Am. Jur. *Easements*, pp. 945, 946). Courts in Tennessee have interpreted the term "necessity" as meaning "reasonably necessary" for the enjoyment of the dominant tenement. *See, e.g.*, *Line*, 43 Tenn.App. 349, 309 S.W.2d at 377; *Johnson*, 237 S.W.2d at 570.

As noted, Robertson was the sole owner of a large tract of land located to the west of State Highway 641. On February 27, 1991, Robertson sold a piece of this tract, now known as the Flea Market Property, to Christopher Medlin, thus creating a separation of title.

Robertson testified that he filled in the road in approximately 1992, after his sale of the Flea Market Property to Christopher Medlin. Appellants contend that the road was filled in prior to purchase of the Flea Market Property. Assuming the 22.0' road was in existence and use prior to separation of the title, we find no evidence in the record to indicate that "before the separation [took] place, the use which [gave] rise to the easement [was] continuous and obvious for a sufficient period

of time such as to show it to be permanent." Robertson testified that the property upon which he built the 22.0' road was undeveloped as late as 1987. Robertson noted that he "built the road to get in to the property to maintain it for my own use," stating:

> Q. And, what was the condition of your property back then?
>
> A. Well, it was undeveloped. I built the road to get in to the property to maintain it for my own use.
>
> Q. Let me ask you, did you subsequently fill that land?
>
> A. Yes, I did.
>
> Q. Approximately when did you fill that land?
>
> A. I believe it was in 1992.
>
> Q. Okay. And, as you stated here – I think you stated – about when was it that you sold the flea market property to Mr. Jimmy Medlin?
>
> A. I believe it was in 1991.
>
> Q. So, after you filled the property in 1992 did you then fix a road surface on it?
>
> A. No, I didn't fix a road surface. I just filled it with dirt.
>
> Q. What happened to that surface then from there, how did it develop?
>
> A. Well, Mr. Medlin asked for permission to put some gravel on the road and to use it temporarily and I told him that I was planning to sell the property and he could use that road until the property was sold and then he would have to make arrangements with the man that bought the property.

The record indicates that title was separated in February 1991. From our review of the record, we find no evidence to indicate that the use of the road prior to separation of the title was "so long continued and obvious or manifest as to show that it was meant to be permanent." Moreover, there is no evidence to suggest that the road was open to the general public for access to the property where the flea market now sits prior to separation of the title. The evidence in the record does not preponderate against the court's implicit finding that Robertson's use of the road, or his permission

for appellants to use the road from approximately 1992 or 1993 through 1996, did not create a permanent easement over the 22.0' gravel road.

Furthermore, we find that the trial court did not err in denying appellants an easement over the 22.0' gravel road where appellants have failed to prove that the easement is essential to the beneficial enjoyment of the Flea Market Property. Appellants essentially argue that an easement by necessity was created as a result of (1) the public's continuous and obvious use of the 22.0' road to access the Flea Market Property and areas beyond from State Highway 641, and (2) operation of law, where the Flea Market Property was zoned exclusively for commercial use.

While we recognize that there is ample testimony in the record regarding the public's use of the 22.0' road to access the Flea Market Property, we do not find that an easement over the road is essential to the beneficial enjoyment of the property. The record provides that the public had direct access to the Flea Market Property from Cane Street as early as April 1994 upon appellants' purchase of Lot 14. Cane Street is a viable or convenient alternate route of access to the Flea Market Property, and we find no evidence in the record to the contrary. Moreover, we note that there is no proof in the record that appellants' flea market business relies primarily or substantially upon revenue generated from consumers or patrons traveling along State Highway 641 and accessing the property via the 22.0' road. Even if we could assume that a significant number of the flea market's customers used the road as direct access to the property from State Highway 641, there is no proof in the record as to the total amount of business or income derived from such customers, the overall number of customers who rely upon the 22.0' road as compared to Cane Street for access to the Flea Market Property, and, most importantly, whether and to what amount the business or income generated by these particular consumers, patrons, or customers would be lost if the public was forced to access the Flea Market Property via Cane Street, rather than the 22.0' road.

As for appellants' argument that an easement was created over the 22.0' road by operation of law, we note that the record on appeal includes a copy of Camden Municipal Zoning Ordinance 6.2 ("Ordinance 6.2"). The stated intent of this ordinance is to "provide for suitable areas that provide a variety of commercial activities located along major transportation routes and are serviced by all municipal services." While Ordinance 6.2 lists minimum requirements with regard to lot area, required front, side, and rear yards, parking areas, and height regulations, the ordinance includes no provision with regard to required avenues of access to public streets or roadways, or state highways. Moreover, appellants fail to cite to any case law supporting their argument that an easement is created or warranted simply because it provides direct access from a primary artery to property zoned exclusively for commercial use, especially where alternative public routes of access to the property exist. We thus find appellants' argument that an easement was created by operation of law to be without merit.

-13-

Appellants finally assert that there has been an implied dedication of the 22.0' gravel road as a public road because the public has been using the road to access the Flea Market Property and properties beyond without objection.

"A dedication is found where the owner of land sets apart a portion of his land by agreement, either for compensation or gratuitously." *Scruggs v. Bell*, No. 01A01-9610-CH-00475, 1997 WL 33620291, at *4 (Tenn. Ct. App. May 9, 1997) (citing *Smith v. Black*, 547 S.W.2d 947, 950 (Tenn. Ct. App. 1976)). In *McKinney v. Duncan*, 118 S.W. 683 (Tenn. 1909), our Supreme Court determined:

> Dedication is the appropriation or gift by the owner of land, or an easement therein, for the use of the public. It may be express, where the appropriation is formally declared, or by implication arising by operation of law from the conduct of the owner and the facts and circumstances of the case. To establish it by implication, there must be proof of facts from which it positively and unequivocally appears that the owner intended to permanently part with his property and vest it in the public, and that there can be no other reasonable explanation of his conduct. In other words, dedication is a question of intention, and the intent must be clearly and satisfactorily proven.

*Id*. at 684.

In *Shahan v. Franklin County*, No. M2002-00725-COA-R3-CV (Tenn. Ct. App. May 6, 2003) (Slip opinion), the Middle Section of this Court stated:

> Parties seeking to prove an implied dedication must present clear and convincing evidence that the property owner intended to permanently part with the real property and to vest it in the public. *Jackson v. Byrn*, 216 Tenn. 537, 543, 393 S.W.2d 137, 140 (1965); *McKinney v. Duncan*, 121 Tenn. 265, 271, 118 S.W. 683, 684 (1909). This evidence may be circumstantial. *Cole v. Dych*, 535 S.W.2d 315, 319 (Tenn. 1976); *Rogers v. Sain*, 679 S.W.2d 450, 453 (Tenn. Ct. App. 1984). They must also prove that the property has been accepted for public use. The government's acceptance of the property likewise need not be express. It too may be implied. *Nashville & D.R.R. v. State*, 60 Tenn. 55, 57-58 (1873); *Hackett v. Smith County*, 807 S.W.2d 695, 699 (Tenn. Ct. App. 1990); *Cartwright v. Bell*, 57 Tenn.App. 352, 368-369, 418 S.W.2d 463, 470-471 (1967).
>
> An implication of public acceptance arises from "a general and long-continued use by the public as of right." *Doyle v. City of*

*Chattanooga*, 128 Tenn. 433, 438, 161 S.W. 997, 998 (1913). While the common-law does not require a particular duration of public use, "it ought to be for such a length of time that the public accommodation and private rights might be materially affected by an interruption of the enjoyment." *Scott v. State*, 33 Tenn. (1 Sneed) 629, 633 (1854); *see also Town of Benton v. Peoples Bank of Polk County*, 904 S.W.2d 598, 602 (Tenn. Ct. App. 1995). The Tennessee Supreme Court has explained that

> [n]o particular period is controlling. Use for twenty years might be insufficient to establish dedication in one case and yet it might be established in another in one year. Dedication is not dependent upon the duration of use. Use for a long period of time is, however, a circumstance tending to show the fact of dedication.

*Cole v. Dych*, 535 S.W.2d at 320.

*Id*. at *5-6.

In considering allegations that an easement was created by implied dedication, we are primarily concerned with the conduct of Robertson and Peach, as successive owners of the land over which the alleged easement runs, and whether the facts and circumstances in this matter "positively and unequivocally" indicate that they "intended to permanently part with [this] property and vest it in the public, and that there can be no other reasonable explanation of [their] conduct." To reiterate, Robertson testified that he built the 22.0' road so that he could access and maintain the property upon which the flea market now sits. Although Robertson testified that he granted appellants use of the road, and despite testimony that the road is used by patrons of the flea market, government utility and service crews, and a local school bus, we find no evidence to "positively and unequivocally" indicate that Robertson intended to permanently dedicate the road and property upon which it sits to the public. As far as we can tell, the road was not fit for public use until at least 1992 when Robertson filled in the land with dirt, and there is no evidence in the record indicating the approximate date upon which the public began use of the road.

No petition has ever been filed to declare the road public. There is no evidence in the record to suggest that the road is included in official maps or plats of the city or county. Moreover, there is absolutely no evidence that the city or county contributed any money to the erection or maintenance of the road. Appellants' financial contribution to the paving of the road does not alter the nature of the road.

While Peach has not physically prevented use of the road by the erection of gates, fences, or blockades since his purchase of the property in 1996, his letters to appellants evinced his intent to

-15-

prohibit use of the roadway without his stated consent. Peach testified that the presence of a permanent road or easement through the middle of his property severely threatened its commercial value, stating:

> Q. Now, the 22 foot roadway identified on the plat that runs from the flea market property out to Highway 641, did you have a discussion about it?
>
> A. Yes. That was a particular interest to me because it was a sizeable investment and the way that was laid out it would split the property where it would make it very difficult to construct large buildings on the back part of the property which is what you want to do with a major shopping center development. So I was very interested in that.
>
> Q. Does that location of a roadway is that on some particularly valuable property fronting on Highway 641?
>
> A. Yes. Extremely valuable and, you know, when you're trying to develop a 20 acre piece of property you have to have a leeway and the option to do a lot of different things. I wouldn't have bought the property had I thought that this wasn't any type of permanent situation.

Based upon the above testimony, we find that Peach harbors absolutely no intent of parting with the property and allowing interest to vest with the public. Of important concern also is the fact that Peach is often away from Camden, Benton County, Tennessee, for extended periods of time and therefore is unable to maintain personal and consistent control over his property and use of the 22.0' road by appellants and the public.

We finally note that appellants have failed to introduce any evidence to demonstrate that public accommodation and private rights "might be materially affected by an interruption of the enjoyment" of the 22.0' road. The proof in the record indicates that a direct and alternate route of access to and departure from the Flea Market Property exists via Cane Street. Moreover, there is no evidence or testimony in the record regarding the nature or extent to which the public would suffer any unnecessary hardship if they were denied use of the 22.0' road.

Based on the foregoing discussion, we find that the evidence in the record does not preponderate against the trial court's finding that no easement for ingress or egress existed over the 22.0' gravel road. We thus find appellants' first three issues without merit.

## II. Easement over the 15.0' Road

We next consider Peach's issue of whether the trial court erred in granting appellants an easement over the 15.0' road.

The record indicates that the Flea Market Property was completely landlocked at the time of appellants' purchase in 1991. Because the property did not "front upon" any public street, Robertson granted appellants a "temporary easement" over the 15.0' road that ran north and south along the eastern edge of the Flea Market Property. The easement was never reduced to writing. Appellants deny that Robertson specified the nature of the easement as temporary.

In *Morris v. Simmons*, 909 S.W.2d 441 (Tenn. Ct. App. 1993), this Court stated:

> The trial court's order implicitly finds that Simmons has an easement of necessity. The evidence in the record supports such a finding. In *Hill v. Beaver*, 454 S.W.2d 718 (Tenn. App. 1969), this court, considering an easement by necessity, said:
>
> > However, we prefer to decide the case on the principle of an easement by necessity. We quote the general rule from 28 C.J.S. *Easements* § 37, page 700:
> > > "Sec. 37.--On Sale of Land Surrounded by That of Grantor and Third Persons
> > >
> > > On a conveyance which leaves the land conveyed or retained surrounded by the land of the grantor or grantee and third persons, a way of necessity is implied in favor of the landlocked parcel.
> > >
> > > If the land granted is partly surrounded by that of the grantor and partly by that of strangers, a right of way over the remaining land of the grantor exists by necessity. If the land retained is surrounded by the land conveyed and the land of strangers, the grantor is entitled to a way of necessity over the land conveyed."
>
> > This same rule was applied in Tennessee in the case of *Jones v. Whitaker*, 12 Tenn.App. 551. *See also Bowles v. Chapman* (1943), 180 Tenn. 321, 175

> S.W.2d 313; *Jones v. Ross* (1963) 54 Tenn.App. 136, 388 S.W.2d 640. *See also McCammon v. Akers*, Tenn.App., 436 S.W.2d 457.

*Id*. at 721.

> 25 Am.Jur.2d *Easements and Licenses* § 34 (1966) states:

> [a] way of necessity is an easement founded on an implied grant or implied reservation. It arises where there is a conveyance of a part of a tract of land of such nature and extent that either the part conveyed or the part retained is shut off from access to a road to the outer world by the land from which it is severed or by this land and the land of strangers. In such a situation there is an implied grant of a way across the grantor's remaining land to the part conveyed, or conversely, an implied reservation of a way to the grantor's remaining land across the portion of the land conveyed. The order in which two parcels of land are conveyed makes no difference in determining whether there is a right of way by necessity appurtenant to either. (footnotes omitted).

*Id*. at 444-45.

This Court further noted:

> Ordinarily, an easement of necessity continues until acquisition of some other lawful way of access. It cannot be extinguished so long as the necessity exists. *McCammon v. Akers*, 58 Tenn.App. 703, 436 S.W.2d 457 (1968). "[A] right of way of necessity ceases when the owner of the way acquires a new means of access to his estate, as where he acquires other property of his own over which he may pass, or where a public way is laid out which affords access to his premises;" 28 C.J.S. *Easements* § 54(b) (1941).

*Id*. at 445-46.

The evidence in the record indicates that an easement of necessity over the 15.0' road was created in favor of the Flea Market Property upon appellants' purchase in 1991. At the time of the purchase the Flea Market Property was landlocked, with no direct access to any public road. As such, appellants necessarily relied upon the 15.0' road for access to their property. However, with

the purchase of Lot 14 in April 1994, appellants obtained direct access to Cane Street near the intersection of Cane and Robertson, thereby extinguishing the necessity of an easement over the 15.0' road. We thus conclude that the trial court erred in granting appellants an easement over the 15.0' road where the Flea Market Property is no longer landlocked since direct access to the property exists over Lot 14, fronting Cane and Robertson streets.

### III. Attorney's Fees

The final issue before this Court is whether the trial court erred in entering a judgment against appellants Robert Wesley Medlin, Jimmy Medlin, and Christopher Medlin, jointly and severally, for payment of $13,410.00 in reasonable and necessary attorney's fees incurred by Peach to "remove the defendants' trespass and offending use of the plaintiffs' real property...." Appellants specifically argue that the court's award is not based upon statute or contract as required under the American rule, but is rather a judgment in lieu of an award of damages for intentional or deliberate trespass.

In *John Kohl & Co. P.C. v. Dearborn & Ewing*, 977 S.W.2d 528, 534-35 (Tenn. 1998), the Tennessee Supreme Court stated:

> [T]he well-established American rule ... provides that attorney's fees may not be awarded to the prevailing party absent statutory authorization or an agreement between the parties so providing. *See, e.g., Olson v. Fraase*, 421 N.W.2d 820, 828-29 (N.D. 1988); *Began v. Dixon*, 547 A.2d 620, 624-25 (Del. Super. Ct. 1988); *Whitney v. Buttrick*, 376 N.W.2d 274, 281 (Minn. App. 1985); *Stinson v. Feminist Women's Health Center*, 416 So.2d 1183, 1185 (Fla. App. 1982); *Sorenson v. Fio Rito*, 90 Ill.App.3d 368, 45 Ill.Dec. 714, 413 N.E.2d 47, 51-53 (1980). Tennessee courts have long adhered to the American rule, concluding that an award of attorney's fees as part of the prevailing party's damages is contrary to public policy. *See, e.g., Pullman Standard v. Abex Corp.*, 693 S.W.2d 336, 338 (Tenn. 1985); *Gray v. Boyle Inv. Co.*, 803 S.W.2d 678, 684 (Tenn. Ct. App. 1990); *John J. Heirigs Constr. Co. v. Exide*, 709 S.W.2d 604, 609 (Tenn. Ct. App. 1986); *Pinney v. Tarpley*, 686 S.W.2d 574, 581 (Tenn. Ct. App. 1984); *Goings v. Aetna Casualty & Sur. Co.*, 491 S.W.2d 847, 848 (Tenn. Ct. App. 1972); *Raskind v. Raskind*, 45 Tenn.App. 583, 325 S.W.2d 617, 625 (1959). We are not persuaded that legal malpractice claims should be made an exception to the rule. Without an agreement between the parties or a controlling statute, attorney's fees in legal malpractice suits, as in other litigation, may not be awarded.

*Id*. at 534-35.

We are alerted to no statute, nor are we aware of one, permitting or mandating the recovery of attorney's fees in an action for intentional or willful trespass. Moreover, in **Gottschall v. Fenn**, 1986 WL 655 (Tenn. Ct. App. Jan. 7, 1986), this Court determined, **inter alia**, that attorney's fees "are not in the nature of damages recoverable for trespass." **Id**. at *3 (citing 87 C.J.S. **Trespass** § 108). We therefore find that the trial court's award of attorney's fees for expenses incurred by Peach to "remove the defendants' trespass and offending use of the plaintiffs' real property" was error.

To the extent that the attorney's fees awarded by the trial court could be considered as punitive damages, we note that a party is entitled to recover punitive damages only if there is an award of actual damages. **See Davenport v. Chrysler Credit Corp.**, 818 S.W.2d 23 (Tenn. Ct. App. 1991). The trial court's final judgment explicitly states that "no damages shall be awarded to plaintiff [on their claim of damages for trespass and encroachment,] because the original use was by permission." The court's refusal to award actual damages for trespass and/or encroachment thereby precludes recovery of punitive damages.

We thus reverse the trial court's judgment awarding attorney's fees.

## IV. Conclusion

In summary, we reverse the trial court's final judgment to the extent that it grants appellants an easement over the 15.0' road running north and south along the eastern boundary of the Flea Market Property, and reverse the court's award of attorney's fees. We affirm the final judgment in all other respects. Costs of this appeal are assessed against the appellants, Robert Wesley Medlin, Jimmy D. Medlin, and Christopher D. Medlin, and their sureties.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.