IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 6, 2018 Session

## JERRY HARLAN, ET AL. v. CORNERSTONE CHURCH OF NASHVILLE, INC.

**Appeal from the Chancery Court for Davidson County**
**No. 16-370-II     William E. Young, Chancellor**

_____

**No. M2017-00671-COA-R3-CV**

_____

This appeal involves a dispute over ownership of three easements and allegations of fraud stemming from the failure of Appellee to honor its alleged oral promise to purchase the disputed easements and an adjacent parcel of land owned by Appellants. The trial court, on Appellee's Motion to Dismiss, ruled that Appellants had no interest in the easements and that Appellants' claim arising from the alleged oral promise to purchase the easements and the adjacent parcel of land was barred by the Statute of Frauds. We affirm the trial court's judgment and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which RICHARD H. DINKINS and W. NEAL MCBRAYER, JJ., joined.

Larry L. Crain, Brentwood, Tennessee, for the appellants, Jerry C. Harlan, Wanda Harlan, David R. Pounders, and Chandra Pounders.

Peter C. Sales and Christopher A. Bowles, Nashville, Tennessee, for the appellee, Cornerstone Church of Nashville, Inc.

# OPINION

## I. Background

This case involves three adjacent parcels of property and the ownership of three easements appurtenant to two of the properties. The northernmost tract of land (the "Pounders Tract") is owned by two of the Appellants, David R. Pounders and Chandra Pounders (together, the "Pounders"). Cornerstone Church ("Appellee") is the owner of the southernmost tract (the "Original Cornerstone Tract"). In 1985, the tract of land between the Pounders Tract and the Original Cornerstone Tract (the "Middle Tract") was owned by Eugene Jackson. In April of 1985, Mr. Jackson and Appellee conveyed three easements across the Original Cornerstone Tract to Appellant Jerry Harlan to benefit the Middle Tract. These easements were recorded in the Register's Office for Davidson County, Tennessee. The first easement runs across a defined portion of the Original Cornerstone Tract for the purpose of constructing a road or highway. The second easement grants two separate permanent easements across the Original Cornerstone Tract for the purpose of constructing, operating, maintaining, repairing and inspecting sanitary sewers and/or improvements and a temporary construction easement across the Original Cornerstone Tract. On December 5, 1997, Appellants, Jerry and Wanda Harlan (together the "Harlans"), acquired an 80% interest in the Middle Tract. In August of 2009, the Harlans declared bankruptcy, and in December of 2009, the Bank of Nashville commenced foreclosure proceedings against the Harlans in connection with the Middle Tract. Cornerstone Church purchased the Middle Tract at foreclosure and received a Successor Trustee's Deed, which was recorded on February 4, 2010.

Originally, the Pounders Tract and the Middle Tract were zoned together as a Planned Unit Development ("PUD"). The original PUD site plan ("Original PUD Plan") filed in 1999 was for single-family lots. In 2013, after Cornerstone Church purchased the Middle Tract, Cornerstone Church applied to rezone the Middle Tract and the Original Cornerstone Tract as a Specific Plan ("SP") to build an assisted living facility. Cornerstone's application amended the Original PUD Plan to remove the single-family lots envisioned for the Middle Tract but preserved the single-family lots on the tract owned by the Pounders.

Appellants were opposed to Cornerstone Church's SP application and allege in their Complaint that Cornerstone Church acted fraudulently in pursuing its application to rezone the Middle and Original Cornerstone Tracts. Specifically, Appellants allege that they met with Appellee's attorney to discuss the SP and were told that Appellee agreed to purchase their property and the easements in exchange for Appellants not appearing and opposing the SP at the Planning Commission Meeting in January of 2014, and the Metro Council Meeting in March of 2014.

In response to Appellee's failure to purchase their property after the SP was

approved, on April 15, 2016, Appellants filed their Complaint in Davidson County Chancery Court (the "trial court") against Appellee for: (1) fraud, fraud in the inducement and promissory fraud; (2) interference with and trespass to easements; and (3) declaratory judgment and to quiet title to the three easements. Appellants' causes of action are based on the following averments in the Complaint:[1]

***

6. [Appellants] aver that they are owners and developers of certain real property and easements located within the original Planned Unit Development Hickory Hills Ridge/North Graycroft.

7. [Appellants], Jerry Harlan and Wanda Harlan, are the owners of three separate easements which are recorded at Book 6572, Page 329, which was entered into on April 23, 1985 and an easement of record in Book 6572, Page 324 which grants the right of ingress and egress across portions of the Cornerstone Tracts.

10. [Appellants], David Pounder[s] and Chandra Pounder[s], are the owners of certain real property located within the original Hickory Hills Ridge/North Graycroft PUD for which [Appellant], Harlan, is the developer for this property.

***

15. [Appellants] aver that [Appellee], Cornerstone, agreed to pay them for their property[,] easements and improvements on or about January 9, 2014. [Appellants] aver that based upon these false representations which were false when made and known to be false by [Appellee], Cornerstone, and its representatives when made, they did not oppose [Appellee]'s plans at the Planning Commission meetings or at the Council meetings. [Appellant], Harlan, avers that he relied upon [Appellee], Cornerstone's, false representations which included suggestions that he did not need to oppose the planning commission vote on the issue and he did not appear or oppose the amendment and cancellation of his PUD.

***

20. [Appellants], Harlan, aver that their easement for ingress and egress

---

[1] To avoid being redundant, we have not cited all relevant averments in the Background section of this Opinion. Other relevant sections of Appellants' Complaint are cited in the Analysis section of the Opinion.

has been violated, taken and interfered with because [Appellee], Cornerstone, has constructed a building which trespasses upon and destroys [Appellants], Harlans', easements. [Appellants] aver that this has materially and adversely affected the use of their other property as well. [Appellee], Cornerstone's, interference with [Appellants], Harlans', easements, as well as Pounders' property and PUD, makes it impossible for [Appellants] [sic] to use their properties [sic] and easements to sell, or convey, control the use of the Middle Tract, and to convey or cause an agreement between all concerned parties.

***

On May 20, 2016, Appellee filed its Motion to Dismiss the entire case. Appellants opposed this motion. The trial court heard Appellee's motion on August 5, 2016, and granted the motion by order of August 19, 2016. Appellants then filed a Motion to Alter or Amend Order on September 19, 2016, and a Reply Memorandum in Support of Motion to Alter or Amend Order on February 22, 2017, where Appellants raised the issue of the trial court converting a Rule 12.02 motion to dismiss into a Rule 56 motion for summary judgment. The trial court heard Appellants' motion on February 24, 2017, and denied it by order of March 3, 2017.

Concerning the Motion to Dismiss, the trial court found that Appellants' cause of action for fraud, promissory fraud or fraud in the inducement failed as a matter of law because: (1) Appellants' claims are barred by the Statute of Frauds; (2) Appellants could not have reasonably relied on Cornerstone Church's alleged representation of an agreement to purchase real estate; and (3) Appellants could not have been damaged by Cornerstone Church's alleged representations. The trial court also found that Appellants failed to state a claim upon which relief could be granted regarding their cause of action for interference and trespass to easements and their cause of action for declaratory judgment and to quiet title because Appellants "do not own any rights to or in the easements at issue." The trial court also found that the easements were appurtenant to the land and the right to use the easements passed to Cornerstone Church when it acquired the Middle Tract. The trial court made the further finding that the easements were extinguished by the doctrine of merger upon Cornerstone's purchase of the Middle Tract. This appeal followed.

## II. Issues

Appellants raise five issues in their brief which we restate as follows:

1. Whether the trial court properly treated Appellee's motion as a Motion to Dismiss instead of converting the motion to a Motion for Summary Judgment.

2.  Whether the trial court properly applied Tennessee Rule of Civil Procedure 12.02(6) and took the Appellants' allegations as true and in the light most favorable to Appellants.

3.  Whether the trial court properly found that the easements in question are easements appurtenant that run with the land that Appellee acquired through foreclosure sale and which were subsequently extinguished by the doctrine of merger.

4.  Whether the trial court properly found that Appellants' alleged claims for fraud are in fact claims for breach of an oral agreement regarding the disposition of real property interests and, therefore, barred by the Statute of Frauds.

### III.  Standard of Review

The resolution of a 12.02(6) motion to dismiss is determined by an examination of the pleadings alone. *Leggett v. Duke Energy Corp.*, 308 S.W.3d 843, 851 (Tenn. 2010); *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 696 (Tenn. 2002). A defendant who files a motion to dismiss "'admits the truth of all of the relevant and material allegations contained in the complaint, but . . . asserts that the allegations fail to establish a cause of action.'" *Brown v. Tenn. Title Loans, Inc*., 328 S.W.3d 850, 854 (Tenn. 2010) (quoting *Freeman Indus., LLC v. Eastman Chem. Co*., 172 S.W.3d 512, 516 (Tenn. 2005)).

In considering a motion to dismiss, courts "must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences." *Tigg v. Pirelli Tire Corp*., 232 S.W.3d 28, 31-32 (Tenn. 2007) (citing *Trau-Med*., 71 S.W.3d at 696). A trial court should grant a motion to dismiss "only when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." *Crews v. Buckman Labs Int'l, Inc*., 78 S.W.3d 852, 857 (Tenn. 2002); *see also Lanier v. Rains*, 229 S.W.3d 656, 660 (Tenn. 2007). We review the trial court's legal conclusions regarding the adequacy of the complaint de novo with no presumption that the trial court's decision was correct. *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 429 (Tenn. 2011).

### IV.  Analysis

#### A.  Motion to Dismiss

At the outset, we address Appellants' argument that the trial court converted Appellee's Motion to Dismiss into a motion for summary judgment by considering matters other than the Complaint, and that Appellants should have been given the

opportunity to conduct discovery before their claims were summarily dismissed.[2] Generally, on a motion to dismiss, when "matters outside the pleading are presented to and not excluded by the [trial] court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Tenn. R. Civ. P. 12.02. Appellants argue that, in making its decision, the trial court considered twelve exhibits that were attached to Appellee's Motion to Dismiss and that the motion was, therefore, converted into a motion for summary judgment. "Whether the trial court should have treated a motion to dismiss as a motion for summary judgment is a question of law subject to *de novo* review on appeal." **Stephens v. Home Depot U.S.A., Inc.**, 529 S.W.3d 63, 71-72 (Tenn. Ct. App. 2016) (*appeal denied* Apr. 13, 2017) (quoting **Belton v. City of Memphis**, No. W2015-01785-COA-R3-CV, 2016 WL 2754407, at *3 (Tenn. Ct. App. May 10, 2016).

The crux of the issues in this case is: 1) who owned and who currently owns the Middle Tract and the Original Cornerstone Tract; 2) what kind of easements were granted to the Harlans and whether, in light of the foreclosure, Appellants still have a property interest in the easements; and (3) whether the parties had an oral agreement for the purchase of real property. From our review, it was not necessary for the trial court to look beyond the four corners of the Complaint to answer these questions. Specifically, the relevant averments in the Complaint are

> 25. [Appellants] aver that on December 5, 1997 Eugene A. Jackson and his wife Janette L. Jackson conveyed eighty percent (80%) of their interest in certain real property to Jerry Harlan and his wife, Wanda Harlan described as [the Middle Tract] . . . .
>
> 26. [Appellants] aver that the Quitclaim Deed was physically presented to Mr. Julian C. Cornett, Executive Vice-President of the Bank of Nashville on the same day and he acknowledged such and signed the Quitclaim Deed. The Quitclaim Deed was filed in the Register of Deeds Office on October 9, 2009.
>
> 27. [Appellants] aver that on or about February 4, 2010 a Successor Trustee's Deed was filed with the Davidson County Register of Deed's Office conveying the instant real property to Cornerstone Church of Nashville, Inc. pursuant to a January 28, 2010 foreclosure sale on the Deed of Trust.

---

[2] Appellee, in its appellate brief, argues that Appellants did not raise this issue at the trial court level and therefore waived the issue on appeal. However, Appellants raised this issue in their Reply Memorandum in Support of Motion to Alter or Amend Order which was filed on February 22, 2017, two days before the hearing on Appellants' Motion to Alter or Amend Order.

***

33. [Appellants], Harlan, aver that they have three easements and the easements were originally conveyed to them by Gene Jackson and [Appellee] and [Appellee] is now the owner of two of the properties affected by easements; these include the entrance tract of land and the adjoining tract of land (middle tract). [Appellants] are affected by [Appellee]'s actions although [Appellants] initially did not own either of the first two tracts of land.

***

39. [Appellant], Harlan, avers that he has a property interest in three easements for which [Appellee], Cornerstone, is the owner of the servient real property.

***

Taking these averments in the Complaint together, the trial court, without considering other matters, was able to find that Eugene and Janette Jackson conveyed an eighty percent interest in the Middle Tract to the Harlans in 1997, that the Bank of Nashville received a Quitclaim Deed from the Harlans for the Harlans' interest in the Middle Tract in 2009, and that the Middle Tract was acquired by Appellee in 2010, pursuant to the foreclosure sale of said tract. Furthermore, the Complaint specifically states that Appellee is the owner of the two tracts affected by the easements in question. Additionally, the Complaint contains a description of each of the easements. For these reasons, we conclude that the trial court did not convert the Motion to Dismiss into a motion for summary judgment. Indeed, in its order, the trial court does not reference any outside matters that could not be found in the Complaint. Admittedly, the trial court's order references the easement exhibits (Exhibit A and B) attached to Appellee's motion; however, the legal descriptions necessary to determine that the easements at issue were easements appurtenant were specifically detailed in Appellants' Complaint.

On appeal, Appellants also argue that the trial court failed to take Appellants' allegations as true and in the light most favorable to Appellants as required by Rule 12.02. As for this argument, the trial court in its order included the following language: "even taking [Appellants]' allegations in their most favorable light . . . " and "the allegations in the Complaint (which the [c]ourt has taken as true) . . . ." We conclude from this finding in its order that the trial court as required by Rule 12.02 took Appellants' allegations as true and in the light most favorable to Appellants in reaching its decision to grant the Motion to Dismiss.

## B. Easements

The Harlan Appellants contend that they maintain a property interest in the three easements. In the Complaint, Appellants aver:

\*\*\*

7. [Appellants], Jerry Harlan and Wanda Harlan, are the owners of three separate easements which are recorded at Book 6572, Page 329, which was entered into on April 23, 1985 and an easement of record in Book 6572, Page 324 which grants the right of ingress and egress across portions of the Cornerstone Tracts.

\*\*\*

An easement is "an interest in property that confers on its holder a legally enforceable right to use another's property for a specific purpose." *Hall v. Pippin*, 984 S.W.2d 617, 620 (Tenn. Ct. App. 1998); *see also* *Fowler v. Wilbanks*, 48 S.W.3d 738, 740 (Tenn. Ct. App. 2000); *Pevear v. Hunt*, 924 S.W.2d 114, 115 (Tenn. Ct. App. 1996). This interest in land can be created the following ways: (1) by express grant; (2) by reservation; (3) by implication; (4) by prescription; (5) by estoppel; and (6) by eminent domain. *Pevear*, 924 S.W.2d at 116. There are two broad categories of easements: easements appurtenant and easements in gross. *Id.* We have previously stated:

> In an easement appurtenant, there are 2 tracts of land, the dominant tenement, and the servient tenement. The dominant tenement benefits in some way from the use of the servient tenement. Easements in gross are simply a personal interest or right to use the land of another which does not benefit another property, or dominant estate, thus easements in gross usually involve only one parcel. An easement appurtenant to land is favored over an easement in gross in Tennessee.

*Id.* (citing *Goetz v. Knoxville Power & Light Co.*, 290 S.W. 409 (Tenn. 1926)).

In their brief, Appellants admit that the easements are express easements appurtenant and that they run with the land. "To create an easement by express grant, there must be a writing containing plain and direct language evincing the grantor's intent to create a right in the nature of an easement rather than a license." *Smith v. Evans*, No. M2007-02855-COA-R3-CV, 2008 WL 3983117, at \*2 (Tenn. Ct. App. Aug. 27, 2008) (citing 25 Am. Jur. 2d *Easements and Licenses* § 15 (2008); *Adcock v. Witcher*, No. 01-A-01-9505-CH00220, 1995 WL 675852, at \*2 (Tenn.Ct.App. Nov. 15, 1995)). Here, Appellants included the requisite language of the easements in their Complaint:

***

8. [Appellants], Jerry Harlan and Wanda Harlan, aver that the express language of the easement recorded at Page 330 reads as follows:

> "This conveyance includes the right of Grantee, its heirs, representatives, and assigns to construct, operate, maintain, repair, replace, and inspect sanitary sewers and/or drainage improvements within the limits of the . . . easements or rights-of-way.
>
> The easements herein granted are perpetual, **shall run with the land**, and are **for the benefit of and appurtenant to [the Middle Tract]** . . . ."

***

9. [Appellants], Jerry Harlan and Wanda Harlan, aver that the express language of the easement recorded at Page 325 reads as follows:

> "The easement herein granted is perpetual, **shall run with the land**, and is **for the benefit of and appurtenant to [the Middle Tract]** . . . .
>
> This conveyance includes the right of the Grantee, its heirs, representatives, and assigns to enter upon the land owned by the Grantors and to grade, level, fill, drain, pave, build, maintain, repair, and rebuild a road or highway, together with such bridges, culverts, ramps, and entryways as may be necessary, on, over, and across the ground embraced within the right-of-way herein described."

(Emphasis added). In their brief, Appellants explain that

> [t]he first easement grants an easement across a defined portion of the [O]riginal Cornerstone [T]ract for the purpose of constructing a road or highway. This easement was granted to Mr. Harlan by Cornerstone and Mr. Eugene Jackson as grant[ors]. The second easement defines the boundaries of and grants two separate permanent easements and a temporary construction easement across the [O]riginal Cornerstone [T]ract for the purpose of constructing, operating, maintaining, repairing, and inspecting sanitary sewers and/or improvements. **The third easement describes the benefited parcel as the "Jackson tract" [the Middle Tract], and includes the same description of the benefitted property as the first and second easements**.

- 9 -

(Emphasis added).

In its order dismissing Appellants' causes of action, the trial court found:

\*\*\*

7. . . . the [c]ourt finds that [Appellants] failed to state a claim upon which relief can be granted because the [Appellants] do not own any rights to or in the easements at issue (the "Easements").

8. The [c]ourt finds that the Easements . . . are properly characterized as easements appurtenant that burden a tract of land owned by Cornerstone (the "Original Cornerstone Tract") and benefit a tract of land purchased by Cornerstone out of foreclosure (the "Middle Tract").

\*\*\*

10. Each of the Easements state that the respective Easement "shall run with the land" and is "for the benefit of and appurtenant to" a specifically identified tract of land (the "Benefitted Parcel"). This language reflects a clear intent to grant an easement appurtenant. Because an easement appurtenant runs with the land, Cornerstone acquired the right to use the Easements when it purchased the Middle Tract.

11. Further, the [c]ourt finds that the [E]asements were extinguished by the doctrine of merger when Cornerstone acquired the Middle Tract . . . .

\*\*\*

From the legal descriptions set out in the Complaint, without reference to the exhibits attached to the Motion to Dismiss, it is clear that the easements conveyed are express easements appurtenant that run with the land. The dominant tenement, the parcel that benefitted from the easement, was the Jackson/Middle Tract, and the servient tenement, the burdened parcel, was the Original Cornerstone Tract. These easements ran with the Middle Tract and continued to burden the Original Cornerstone Tract until Appellee purchased the Middle Tract in early 2010. Interestingly, Appellants admit in the Complaint that Appellee owns both the Middle Tract and the Original Cornerstone Tract:

\*\*\*

33. [Appellants], Harlan, aver that they have three easements and the

- 10 -

easements were originally conveyed to them by Gene Jackson and [Appellee] and [Appellee] is now the owner of two of the properties affected by easements; these include the entrance tract of land [Original Cornerstone Tract] and the adjoining tract of land (middle tract). [Appellants] are affected by [Appellee]'s actions although [Appellants] initially did not own either of the first two tracts of land.

\*\*\*

When Appellee purchased the Middle Tract, the easements complained of by the Appellants were extinguished by the doctrine of merger. The doctrine of merger states:

> When one party acquires a fee title to both the servient and dominant estates, the easement merges into the interest of the servient estate and terminates . . . . However, for an easement to be extinguished by merger, unity of title must exist in the same person, and ownership of the dominant and servient estates must be coextensive and equal in validity, quality, and all other circumstances of right . . . . Moreover, an easement will not merge when an intervening life estate prevents complete unity of ownership in the domina[nt] and servient estates.

25 Am. Jur. 2d *Easements and Licenses* § 87 (2018) (internal citations omitted). *See also* ***Vanderbilt Univ. v. Williams***, 280 S.W. 689, 691-92 (Tenn. 1926); ***Hall v. Pippin***, 984 S.W.2d 617, 622 (Tenn. Ct. App. 1998); ***Honeycutt v. Price***, No. 03A01-9610-CH-00329, 1997 WL 269472, at \*2 (Tenn. Ct. App. May 21, 1997).

Despite admitting that the easements are easements appurtenant that run with the land and also admitting that Appellee is the owner of both the Middle Tract and the Original Cornerstone Tract, the Harlans still maintain that they have an ownership interest in the easements. Mr. Harlan first argues he has some sort of life estate that prevents a merger because the doctrine of merger cannot cut off a third party's interest in easements. Next, Mr. Harlan argues he never sold his interest in the easements. The Harlans at oral argument also contended that the intention in acquiring the easements was to benefit the Pounders' lot and the Original PUD Plan and that the easements must continue for that purpose. We disagree.

As discussed *supra*, when an easement is created by express grant, the writing evinces the grantor's intent. There is nothing written in the conveyance of the easements that suggest that Mr. Harlan was given a life estate in the easements. Nor is it alleged in the Complaint that Mr. Harlan has a life estate in any of the parcels affected by the easements. Therefore, Mr. Harlan's argument regarding a life estate preventing the application of the doctrine of merger is without merit. Additionally, the writing that created the easements does not state that the easements extended to the Pounders' lot, or that the easements were created for the purpose of benefitting the Pounders' lot. The

benefitted land as stated in the conveyances was the Middle Tract. When Appellee purchased the Middle Tract, Appellee became the owner in fee simple of both the dominant and servient tenements, and the doctrine of merger extinguished the easements. Because the easements have been extinguished, Mr. Harlan no longer has a property interest in the easements that he could offer for sale.

Therefore, we affirm the trial court's ruling that the easements were easements appurtenant that ran with the Middle Tract and that all of the easements were extinguished through merger when Appellee purchased the Middle Tract in 2010. As such, Appellants' Second Cause of Action for Interference and Trespass to Easements and Appellants' Third Cause of Action for Declaratory Judgment and to Quiet Title fail as a matter of law.

### C. Fraud Claims

Appellants allege that the gravamen of their Complaint is an action for fraud arising from Appellee's allegedly deceptive acts perpetrated during the course of negotiations with Appellants. These deceptive acts allegedly concerned the Planning Commission and the Metro Council. In the Complaint, Appellants state the following:

***

11. [Appellants] aver that on or about November 26, 2013 . . . [Appellant was] put . . . on notice that [Appellee], Cornerstone, was going to seek to amend the existing PUD that overlays [Appellee], Cornerstone's, and the Harlans['] property as well as their property. . . . The two viable PUD layouts [Appellee] sent offered two options. The two PUD layouts were unknowingly changed before the planning meeting of January 9, 2014 which made [Appellants'] project impossible to develop.

***

14. [Appellants] aver that they negotiated with [Appellee], Cornerstone and/or its representatives, on multiple occasions. The third meeting happened to coincide with the [P]lanning [C]ommission meeting [sic] on January 9, 2014 during which they were persuaded and induced not to attend and oppose their plans. Jerry Harlan asked Tom White . . . if he needed to go to the meeting and Tom told Jerry Harlan "no because a deal ha[s] been made."

15. [Appellants] aver that [Appellee], Cornerstone, agreed to pay them for their property[,] easements and improvements on or about January 9, 2014. [Appellants] aver that based upon these false representations which were

false when made and known to be false by [Appellee], Cornerstone, and its representatives when made, they did not oppose [Appellee]'s plans at the Planning Commission meetings or at the Council meetings. [Appellant], Harlan, avers that he relied upon [Appellee], Cornerstone's, false representations which included suggestions that he did not need to oppose the planning commission vote on the issue and he did not appear or oppose the amendment and cancellation of his PUD.

16. [Appellants] aver that they reasonably relied upon the material, false representations of [Appellee], Cornerstone, and its representatives that they would be paid for their interests and real property. Their reasonable reliance was ultimately to their detriment.

17. [Appellants] aver that [Appellee], Cornerstone, acted willfully and intentionally in persuading [and] inducing them not to challenge their application to amend [Appellants'] existing PUD. . . .

***

19. [Appellants] aver that [Appellee], Cornerstone, has interfered with the use, enjoyment and utility of the aforepled easements, real property and PUD. [Appellants] aver that [Appellee's] intrusion onto their easements has violated their rights in the easements as well as in their adjoining property which is subject to the new PUD, and the property known as Hickory Hills.

***

23. [Appellants] aver that on March 3, 2014 Tom White called and informed [Appellants] that he had worked out an agreement to purchase [Appellants]' property and property rights and set up a meeting for the following day.

24. [Appellants] aver that on March 4, 2014 the parties met and Tom White persuaded [Appellant] not to attend the Metro Council meeting that night because they had a deal. . . . [Appellants] were not present based on their prior agreements that were false and ultimately violated.

***

28. [Appellants] aver that [Appellee] presented Jerry Harlan with engineering plans for the servient property which did not include his easements by the engineering firm Civil Site, Inc. by and through

- 13 -

[Appellee] and its representatives. [Appellant], Jerry Harlan, avers that he relied upon the oral representations of [Appellee] in agreeing to sell his property rights to it in addition to the engineering plans presented to him. He relied on these in agreeing not to oppose [Appellee]'s zoning changes before the Planning Commission as well.

29. [Appellants] further aver that [Appellee] represented and presented different engineering site plans to them than to the Planning Commission and Metro. . . .

*****

## IV.
## First Cause of Action
## Fraud, Fraud in the Inducement and Promissory Fraud

32. [Appellants] aver that [Appellee], Cornerstone, by and through its representatives, on January 9, 2014 and March 4, 2014 made false representations that [Appellee], Cornerstone, was going to pay [Appellants] the appraised value of their real property, improvements, infrastructure and easements. [Appellants] aver that [Appellee], Cornerstone, knew the statements and representations that the matter was settled and they would pay [Appellants] were false when made on January 9, 2014 and March 4, 2014.

*****

In its order, the trial court found:

[Appellants]' basis for their fraud claim is that Cornerstone (through its alleged representatives) made an oral promise to pay [Appellants] the appraised value of certain real property, improvements, infrastructure and easement in exchange for not challenging the zoning changes to that property and the neighboring property owned by Cornerstone. Compl. ¶¶ 15-18, 21, 23-24, 28, 32. Because Cornerstone's alleged misrepresentations were alleged statements of an oral promise to purchase real property, the [c]ourt finds that [Appellants]' claims are functionally contract claims couched as tort claims, and are therefore barred by the Statute of Frauds as set forth in Tenn. Code Ann. § 29-2-101(a).

Taking Appellants' statements in the Complaint as true, we agree with the trial court that Appellants' fraud claims are based on Appellee's alleged oral promise to purchase Appellants' real property and, as such, are barred by the Statute of Frauds. The Statute of

Frauds is codified at Tennessee Code Annotated Section 29-2-101, which provides in relevant part:

> (a) No action shall be brought:
>
> ***
>
> (4) Upon any contract for the sale of lands, tenements, or hereditaments, or the making of any lease thereof for a longer term than one (1) year;
>
> ***
>
> unless the promise or agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person lawfully authorized by such party.

Tenn. Code Ann. § 29-2-101. Appellants alleged fraud in their Complaint; however, the crux of their claim is that Appellee breached a promise or agreement to purchase Appellants' real property. Such agreements for the purchase of real property fall within the Statute of Frauds and are only enforceable if reduced to writing. The Tennessee Supreme Court has stated that

> . . . a false promise to sign an instrument in the future is not such fraud as will take the case out of the operation of the statute of frauds. Taking the complainants' contention in its most favorable light, it is nothing more than an attempt either to specifically enforce or recover damages under an oral agreement which the parties contemplated should later be reduced to writing, and it, therefore, falls squarely within the application of the statute of frauds.

***Webb v. Shultz***, 198 S.W.2d 333, 336 (Tenn. 1946). Therefore, we affirm the trial court's ruling that Appellants' First Cause of Action for Fraud, Promissory Fraud or Fraud in the Inducement fails as a matter of law.

- 15 -

## V. Conclusion

For the foregoing reasons, we affirm the trial court's order. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed against the Appellants, Jerry Harlan, Wanda Harlan, David R. Pounders, and Chandra Pounders and their surety, for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE